# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-02073-SCT

*DIALYSIS SOLUTION, LLC*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF HEALTH, DR. MARY CURRIER, IN HER CAPACITY AS THE EXECUTIVE DIRECTOR OF THE DEPARTMENT OF HEALTH; STATE OF MISSISSIPPI AND RCG-MONTGOMERY COUNTY, LLC*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2008 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BRYANT WANDRICK CLARK |
| | ROBERT GEORGE CLARK, III |
| ATTORNEYS FOR APPELLEES: | BEA McCROSKY TOLSDORF |
| | BARRY K. COCKRELL |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 02/18/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case requires interpretation of Section 41-7-195 of the Mississippi Health Care Certificate of Need Law of 1979. This statutory section addresses the validity and duration of a Certificate of Need (CON), which is a certificate that healthcare providers must obtain from the Mississippi State Department of Health (MSDH) prior to constructing certain

healthcare facilities or offering designated health services. The two issues before this Court are: 1) Whether, pursuant to Section 41-7-195, the MSDH has the authority to grant an extension of a CON after the date of expiration specified in the CON; and 2) whether, pursuant to Section 41-7-195, the MSDH has the authority to grant multiple extensions of a CON. The plaintiff – Dialysis Solution, a company desiring to develop a kidney-disease treatment facility in Montgomery County, Mississippi – argues that the MSDH has never had the authority to take either of these actions. The defendants – the MSDH, the State Health Officer (the late Dr. Ed Thompson[1]), the State of Mississippi, and RCG-Montgomery, LLC (RCG), the developer of a kidney-disease treatment facility in Montgomery County and holder of the CON at issue – argue that the MSDH had the authority to take both these actions. The trial court ruled in favor of the defendants on both issues. Finding that the MSDH did not have the authority to grant an extension of RCG's CON after the CON's expiration date, and finding this issue dispositive, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

¶2.     This case focuses on the validity of a Certificate of Need (CON) that was issued to defendant RCG-Montgomery County, LLC (RCG), to develop a kidney-disease treatment facility in Montgomery County. To assist the trial court in making its final judgment on the

---

[1] State Health Officer Dr. Ed Thompson passed away during the pendency of this appeal, and pursuant to Miss. R. App. P. 43(c)(1), Interim State Health Officer Dr. Mary Currier was automatically substituted in her official capacity. She later was confirmed as permanent State Health Officer.

issues presented, all parties agreed to stipulate to the facts of the case. Unless otherwise noted, all of the following facts were taken from the parties' Joint Stipulation of Facts.

¶3. The Mississippi Health Care Certificate of Need Law of 1979 (The Health Care CON Law) (Miss. Code Ann. §§ 41-7-173 through 41-7-209 (Rev. 2009)) designates the Mississippi State Department of Health (MSDH) as the sole agency to administer and supervise all state health planning responsibilities. Miss. Code Ann. § 41-7-175 (Rev. 2009). The purposes of Mississippi's health planning and regulatory activities are to prevent unnecessary duplication of health resources, provide cost containment, improve the health of Mississippi residents, and increase the accessibility, acceptability, continuity, and quality of health services. Mississippi Department of Health, State Health Plan for Fiscal Year 2005: Introduction, *available at* http://msdh.ms.gov/msdhsite/_static/resources/1083.pdf (last accessed Feb. 11, 2010).

¶4. The Health Care CON Law authorized the MSDH to develop and implement a statewide health CON program. Miss. Code Ann. § 41-7-187 (Rev. 2009). A CON must be obtained from the MSDH before a person may undertake any of the activities described in Section 41-7-191(1), which include the establishment of End-Stage Renal Disease (ESRD) facilities. Miss. Code Ann. § 41-7-191(1) (Rev. 2009). No final arrangement or commitment for financing such activity may be obtained by any person unless the MSDH has issued a CON for such arrangement or commitment. Miss. Code Ann. § 41-7-193(1) (Rev. 2009). No CON shall be issued unless the project proposed in the application for such CON has been reviewed for consistency with the specifications and criteria established by the MSDH

3

and substantially complies with the projection of need as reported in the Mississippi State Health Plan which is in effect at the time the application is submitted to the MSDH. Miss. Code Ann. § 41-7-193(1).

¶5.     The Mississippi State Board of Health authorized the MSDH to issue CONs for the construction or expansion of ESRD facilities having a need in several counties, including Montgomery County.  On December 16, 2004, after having reviewed a CON application from RCG, the MSDH issued a CON to RCG for a six-station ESRD facility in the City of Winona in Montgomery County.

¶6.     While the CON for the RCG ESRD facility was issued in December 2004, for two significant reasons, RCG did not commence development and construction of the project until approximately September 2007.[2]  First, approximately eight months after the CON was

_____

[2] The land for the RCG facility was purchased on February 2, 2007, and the closing for the land was on March 17, 2008.  RCG planned a groundbreaking ceremony for November 16, 2007. RCG submitted documentation of commencement of the project to the MSDH on December 18, 2007.

   In a brief that the defendants submitted to the trial court, they stated:

   . . . RCG has been engaged in developing and constructing the ESRD facility in
   Winona for more than five (5) months [from the date of February 29, 2008 – i.e.,
   since approximately September 2007].  The project is well underway. . . .

Additionally, in defendants' brief to this Court, they state that, at the time Dialysis Solution sought injunctive relief (i.e., in October 2007), RCG's dialysis facility was "already well under construction . . . ."

   However, in Dialysis Solution's brief to this Court, it claims that, "at the time this action was brought [on October 23, 2007], not only, had construction not commenced but the property for the facility had not been acquired."

   It is not crucial to determine whether construction of the RCG facility commenced in September 2007 or a few months later; the relevant point, as discussed later in this opinion, is that construction of the facility was in its infancy when Dialysis Solution filed its Complaint in October 2007.

4

issued, Hurricane Katrina devastated the Mississippi Gulf Coast. The hurricane had a significant impact on ESRD facilities operated by RCG's parent company, Renal Care Group, Inc., and also on facilities operated by the company that was involved in negotiations to acquire RCG's parent company, Fresenius Medical Care Holdings, Inc. (Fresenius). As a result, those two companies devoted all of their time and resources to recovery efforts on the Gulf Coast, which were necessary to insure that ESRD patients in that area had access to dialysis treatment. Second, in 2005, Renal Care Group, Inc. (RCG's parent company), negotiated and executed an agreement to be acquired by Fresenius. Renal Care Group, Inc., announced the definitive agreement on May 4, 2005, but RCG could not move forward with the development of the ESRD facility in Montgomery County until federal regulatory approvals were secured regarding the transaction. More specifically, RCG had to wait until the Federal Trade Commission could analyze the operations of Renal Care Group, Inc., and Fresenius in Mississippi to determine whether either or both companies would have to sell assets and/or facilities to address antitrust concerns. Until this federal review was complete, there was no way to know whether the RCG Montgomery County dialysis facility project could be retained and developed. After the necessary federal regulatory approvals were obtained on July 5, 2006, and following the recovery from Hurricane Katrina, RCG turned its attention back to the development of the dialysis facility in Montgomery County.

¶7.     On December 29, 2006 (about eight or nine months before RCG began construction on its dialysis facility), MSDH received a CON application for the establishment of a twelve-station ESRD facility in Montgomery County from Dialysis Solution.[3]

¶8.     On January 8, 2007 (ten days after the MSDH received a CON application from Dialysis Solution), RCG filed its first request for a six-month extension of the CON that it had been issued on December 16, 2004.  On January 18, 2007, the State Health Officer granted the requested six-month extension.  In August 2007, RCG requested a second six-month extension.  On August 30, 2007, the State Health Officer granted RCG this second extension, making it the second official six-month extension granted of four official six-month extensions the State Health Officer ultimately granted before the project was completed in August 2008.

---

[3] In the defendants' brief to this Court, they state that, in a staff analysis report that the MSDH had prepared for review by the State Health Officer, the MSDH had recommended disapproval of Dialysis Solution's CON application.  The defendants explain in more detail:

> Dialysis Solution failed to submit all necessary information in order to have the [CON] application [for its own ESRD facility in Montgomery County] deemed complete.  As a result, the Dialysis Solution CON application was not deemed complete until October 1, 2007, nearly a year after the initial filing.
>       In November of 2007, the MSDH issued a staff analysis report on the Dialysis Solution CON application.  In that report, the MSDH recommended **disapproval** of the Dialysis Solution application.  The MSDH staff concluded that the Dialysis Solution application was not in compliance with the applicable CON criteria and standards, and recommended that the proposal not be approved.

Notably, the MSDH staff analysis report was issued to the State Health Officer in November 2007 – i.e., shortly after Dialysis Solution filed its Complaint against the MSDH.

6

¶9. In a letter dated September 27, 2007, Dialysis Solution requested a public hearing for revocation of RCG's CON, arguing that, pursuant to Section 41-7-195, the MSDH is forbidden from extending a CON after the CON has lapsed, and that it is forbidden from extending a CON for any amount of time exceeding six months (i.e., forbidden from allowing a CON to be outstanding for more than the initial twelve-month duration of the CON plus one six-month extension). In the alternative, Dialysis Solution argued, the MSDH should revoke RCG's CON for RCG's failure to commence construction on the facility more than two-and-a-half years after it had been issued the CON. In a letter dated October 12, 2007, the MSDH denied Dialysis Solution's request for a public hearing on the revocation of RCG's CON.

¶10. On October 12, 2007, at Dialysis Solution's request, the Mississippi Attorney General's Office issued an opinion clarifying its understanding of Section 41-7-195 as it relates to expirations of CONs. The Attorney General's Office explained that it is its opinion that, pursuant to Section 41-7-195, after the date of expiration of a CON, the CON is automatically void by operation of law and does not require any action on the part of the MSDH to finalize its voided status. The Attorney General's Office elaborated:

> The statute expressly provides that a CON is valid only for the time period stated therein. . . . [O]nce the time period stated in the CON has lapsed, the CON is void and no extensions can be granted. At that point, the applicant would be required to reapply for a CON. . . . [A]fter the expiration of the time period stated in the CON, the Department does not have the authority to grant an extension of the CON. Any extensions granted pursuant to Section 41-7-195(3) must be granted prior to the expiration.

7

Op. Att'y Gen. 2007-00467 (Miss. Oct. 12, 2007).

¶11.    On October 23, 2007, Dialysis Solution filed a Complaint for Declaratory Judgment and Injunctive Relief in the Chancery Court for the First Judicial District of Hinds County, Mississippi. In Dialysis Solution's Complaint, it argued that, pursuant to Section 41-7-195, the MSDH is forbidden from granting more than one six-month extension of a CON (i.e., a CON cannot be valid for more than a total of eighteen months), thus the CON issued to RCG on December 16, 2004, is invalid by operation of law. On February 20, 2008, Dialysis Solution filed a Motion for Temporary Restraining Order and/or Preliminary Injunction to enjoin the MSDH from granting any additional extensions of RCG's CON, to enjoin the MSDH from issuing a license to RCG for an ESRD facility in Montgomery County, and to prohibit RCG from continuing any construction on the ESRD facility in Montgomery County until the trial court ruled on the matter. On March 3, 2008, Dialysis Solution filed an Amended Complaint, adding the argument that, pursuant to Section 41-7-195, once the time period stated in the CON has lapsed, the CON is void, and the MSDH does not have the legal authority to extend it.

¶12.    On October 26, 2007 – three days after Dialysis Solution filed its initial Complaint – the MSDH issued an official notice that it had received the October 12, 2007, Attorney General's Opinion regarding interpretation of Section 41-7-195 as it relates to CON extensions. The notice explained that, in response to the Attorney General's Opinion, the MSDH was adopting a Temporary Rule, effective October 29, 2007, to develop a clear and

8

consistent process for the review and extension of outstanding CONS. The MSDH stated that the reasons for the Temporary Rule were as follows:

> The Department of Health finds that Certificates of Need ("CONs") have been issued to serve unmet healthcare needs of the state and that compliance with the Attorney Generals's Opinion of October 12, 2007, may prevent the completion of outstanding CONs that were issued to address such needs. Changes in the CON Rules regarding extensions of valid CONs are necessary to comply with the Attorney General's Opinion, to modify requirements for six-month extensions, to clarify the status of incomplete CONs, and to provide transition of incomplete CONs.

¶13. The Temporary Rule provided that, in order to continue authority for a CON following the initial twelve-month issuance period, the CON holder is required to document substantial progress toward completion of the certificated facility and be granted a six-month extension. The CON holder is required to file a request for a six-month extension at least thirty days prior to the expiration of the original or any extended period of the CON. The Temporary Rule further provided that "[i]f a CON holder fails to receive Department approval for an extension prior to the CON's expiration date, the CON shall be automatically void, and shall not require any action on the part of the Department to withdraw, revoke or rescind the certificate." However, the Temporary Rule made an exception for those who at the current time held expired or very-soon-to-expire CONS. It stated:

> For currently approved projects where the original CON has expired, or an extension of the CON has expired, or where the CON will expire in 30 days from the effective date of this rule, the CON holder has 15 business days from the effective date of this rule (or by November 19, 2007) to submit a progress report documenting project completion, or submit a request for a six-month extension. . . .

9

This Temporary Rule became a Permanent Rule on February 23, 2008. Hereinafter, the Temporary and Permanent Rule will be referred to as "the new Rules."

¶14. On November 16, 2007, pursuant to the new Rules, RCG filed a request for a six-month extension of its CON, and on December 18, 2007, RCG submitted to the MSDH a progress report and documentation of commencement of construction of the project. On January 14, 2008, the MSDH granted RCG's request for a six-month extension, making this the third official six-month extension granted to RCG. The MSDH explained that this latest extension period would terminate on June 16, 2008.

¶15. On March 27, 2008, the trial court issued an Order denying Dialysis Solution's Motion for Temporary Restraining and/or Preliminary Injunction.

¶16. On May 16, 2008, RCG requested another six-month extension, and was granted this extension on May 20, 2008, making this the fourth and final six-month extension granted to RCG.

¶17. On August 1, 2008, construction of the RCG dialysis facility was completed, and the City of Winona issued RCG a Certificate of Occupancy for it. On August 25, 2008, the RCG facility commenced operations with the treatment of a dialysis patient.

¶18. On December 8, 2008, the trial court issued a Final Judgment in favor of the defendants, finding "no legal basis to determine that the granting of the CON extension by MSDH to RCG was arbitrary or capricious or otherwise illegal or improper." Dialysis Solution then timely filed its appeal to this Court.

¶19. Because we find the issue of whether the MSDH had the authority to grant an extension of RCG's CON after the CON's expiration date to be dispositive, we decline to address the issue of whether the MSDH had the authority to grant multiple extensions of RCG's CON.

## DISCUSSION

¶20. This appeal requires review of the MSDH's interpretation of and decision-making under Mississippi Code Section 41-7-195, the section of the Health Care CON Law that addresses the validity and duration of CONs. Miss. Code Ann. § 41-7-195 (Rev. 2009). The relevant portion of Section 41-7-195 states:

> (1) . . . A certificate of need shall be valid for the period of time specified therein.
> (2) A certificate of need shall be issued for a period of twelve (12) months, or such lesser period as specified by the State Department of Health.
> (3) The State Department of Health may define by regulation, not to exceed six (6) months, the time for which a certificate of need may be extended.

Miss. Code Ann. § 41-7-195(1)-(3) (Rev. 2009).

¶21. The standard of review this Court applies to an administrative agency's decision is well established. When reviewing the decision of an agency, this Court is limited as to the scope and depth of its inquiry. It will reverse the decision of an agency only if the decision was: 1) not supported by substantial evidence; 2) arbitrary or capricious; 3) beyond the power of the agency to make; or 4) violated a statutory or constitutional right of the complaining party. *Miss. Methodist Hosp. and Rehab. Ctr. v. Miss. Div. of Medicaid*, 2009 WL 3031184, *4 (Miss. Sept. 24, 2009). *See also* ***Green v. Cleary Water, Sewer, & Fire Dist.*,**

11

17 So. 3d 559, 566 (Miss. 2009). There is a rebuttable presumption in favor of the action of the agency, and the burden of proof is on the party challenging the action. *Green*, 17 So. 3d at 566.

¶22. An agency's interpretation of a statute governing its operation is a matter of law and is thus reviewed de novo, but with great deference to the agency's interpretation. *Miss. Methodist Hosp. and Rehab. Ctr.*, 2009 WL 3031184, at *5. Deference is afforded the agency because "the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate." *Id.* (quoting *Gill v. Miss. Dep't of Wildlife Conservation*, 574 So. 2d 586, 593 (Miss. 1990)). If an agency's interpretation of a statute is contrary to the unambiguous language or best reading of a statute, however, this Court will not afford it any deference. *Id.* This Court will not uphold an agency's interpretation if "it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* (quoting *Buelow v. Glidewell*, 757 So. 2d 216, 219 (Miss. 2000)).

¶23. Dialysis Solution argues that the MSDH does not have the authority to grant an extension of a CON after the date of expiration specified in the CON. Dialysis Solution contends that, once the stated duration of the CON has lapsed, the CON is void, and the MSDH must reissue the CON in accordance with CON statutory provisions. Therefore, Dialysis Solution reasons, since the expiration date of RCG's CON was December 16, 2005,

12

RCG's CON became void on that date, and the MSDH did not have the authority to grant any of the six-month extensions that it granted to RCG after that date.

¶24.    The defendants argue that the MSDH had the authority to grant RCG all of the extensions it was granted, pursuant to the regulations the MSDH adopted in accordance with its rule-making authority (i.e., pursuant to "the new Rules"). The defendants refuse to admit that RCG's CON expired a year after it was granted, but they fail to offer any explanation as to how or why the CON did not expire at that time (i.e., on December 16, 2005). The defendants resort to not directly addressing either this question or the question of how the MSDH had the authority to extend RCG's CON long after the CON's expiration date. Instead, the defendants repeatedly point to the MSDH's authority to promulgate rules and regulations regarding the CON program, the fact that the MSDH promulgated the new Rules to address the validity, duration, and extensions of CONs, and the fact that RCG has complied with the new Rules. The defendants argue that "[t]here is no legal basis whatsoever for Dialysis Solution's claim that the MSDH did not have the authority to extend a CON when it has purportedly 'expired.'" This contention, the defendants assert, "is based solely on an Attorney General's Opinion, which can neither validate nor invalidate a past action of a State officer or agency, and operates prospectively only." "The Attorney General [*sic*] Opinion itself is not some type of binding, retroactive legal finding and precedent that invalidates the CON issued to RCG," the defendants explain. The defendants also argue that, because its CON has been fully implemented and its dialysis facility is currently serving

13

numerous patients, it would be a grave injustice to these patients, their families, and the public to impede the operation of the facility.

¶25. The trial court agreed with the defendants' arguments and found that the MSDH in no way had overstepped its authority by granting all the CON extensions to RCG that it did.

¶26. Specifically, the question before this Court is whether the MSDH exceeded its power and violated Section 41-7-195(1)-(2) of the Health Care CON Law when, on January 18, 2007, it granted RCG's January 8, 2007, request for a six-month extension, this request having been made one year and twenty-three days after the date of expiration specified on RCG's CON.[4] As noted above, Section 41-7-195(1)-(2) states that "[a] certificate of need shall be valid for the time period specified therein" and "[a] certificate of need shall be issued for a period of twelve (12) months, or such other lesser period as specified." Miss. Code Ann. § 41-7-195(1)-(2) (Rev. 2009). Also as noted above, this Court will not engage in statutory interpretation if a statute is plain and unambiguous. *Miss. Methodist Hosp. and Rehab. Ctr.*, 2009 WL 3031184, at *6. *See also* **BellSouth Telecomms., Inc. v. Miss. Pub. Serv. Comm'n**, 2009 WL 2393808, *4 (Miss. 2009) ("When the language used by the Legislature is plain and unambiguous and the statute conveys a clear and definite meaning, as here, the Court will have no occasion to resort to the rules of statutory interpretation."); **Marx v. Broom**, 632 So. 2d 1315, 1318 ("Courts have a duty to give statutes a practical

[4] While it is not necessary to analyze more than one instance of the MSDH granting RCG an extension after RCG's CON had expired, it should be noted that RCG's request for a second six-month extension was made after the first six-month extension had expired.

14

application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature.").

¶27.    Section 41-7-195(1)-(2) is plain and unambiguous in stating that a CON "shall be valid for the period of time specified therein," and that such period shall not exceed twelve months. Miss. Code Ann. § 41-7-195(1)-(2). The statutory section makes clear that, unless the CON holder requests an extension of the CON before the time period stated in the CON lapses, the CON will expire and become void at the end of that specified period. Miss. Code Ann. § 41-7-195(1)-(3) (Rev. 2009).

¶28.    In the instant case, the MSDH issued RCG a CON on December 16, 2004, set to expire twelve months later on December 16, 2005. Not until January 8, 2007 – one year and twenty-three days after the expiration date of RCG's CON – did RCG apply for an extension of this CON. By January 2007, RCG's CON clearly had expired, and the MSDH did not have the authority to   contravene Section 41-7-195 and revive RCG's expired CON by issuing RCG a six-month CON extension. It is plain error to interpret Section 41-7-195 to mean that the MSDH has the discretion to take such an action, and the MSDH's adoption of such an interpretation is an abuse of discretion. After the stated expiration of a CON, the MSDH must reopen the CON application and review process as provided by statute and regulation.

¶29.    Moreover, at the time that Dialysis Solution filed its Complaint (i.e., on October 23, 2007), the MSDH's own Certificate of Need Review Manual, which sets forth the rules and regulations governing CONs, stated:

15

102     **Six-Month Extension**

102.01     Certificates of Need are valid for a period not to exceed one year and may be extended by the Department for an additional period not to exceed six months.

Mississippi State Department of Health, Certificate of Need Review Manual, Chapter 6 - Subsequent Reviews, Effective: September 8, 2007. This rule, reiterating Section 41-7-195, supports the contention that a CON becomes void on the expiration date stated in the CON (unless an extension of the CON is timely requested).

¶30.   Section 41-7-185(c) of the Health Care CON Law authorizes the MSDH to "promulgate such reasonable rules and regulations as may be necessary to the implementation of the purposes of § 41-7-171, et seq. [i.e., the Health Care CON Law]." Miss. Code Ann. § 41-7-185(c) (Rev. 2009). In addition, Section 41-7-187 authorizes the MSDH to adopt rules and regulations regarding the issuance of CONs. Miss. Code Ann. § 41-7-187 (Rev. 2009).[5] However, Section 41-7-195 makes clear that the Legislature did not

---

[5] Section 41-7-187 states in full:

The State Department of Health is hereby authorized to develop and implement a statewide health certificate of need program. The State Department of Health is authorized and empowered to adopt by rule and regulation:
(a) Criteria, standards and plans to be used in evaluating applications for certificates of need;
(b) Effective standards to determine when a person, facility or organization must apply for a certificate of need;
(c) Standards to determine when a change of ownership has occurred or will occur; and
(d) Review procedures for conducting reviews of applications for certificates of need.

Miss. Code Ann. § 41-7-187 (Rev. 2009).

intend for the MSDH's rule-making authority to extend to promulgation of rules regarding how long a CON can be outstanding. The existence of Section 41-7-195 indicates that the Legislature wanted to control through statute the time period for which a CON could be outstanding. Presumably, the Legislature would not have enacted Section 41-7-195 if it had intended CONs to remain valid indefinitely or until the MSDH chose to revoke them.

¶31. Nowhere in the statute does the Legislature grant the MSDH the authority to promulgate a rule to revive and extend an expired CON, and "a statutory agency has only legislation [*sic*] granted authority, there is not inherent authority." ***Miss. Pub. Serv. Comm'n v. Miss. Power & Light Co.***, 593 So. 2d 997, 999 (Miss. 1991). An agency cannot grant itself broader authority than the Legislature gave it. *See **id.*** (" . . . [T]his Court has repeatedly stated that powers legislatively granted to and exercised by an administrative agency are limited to and must not exceed the authority prescribed by the legislative enactment."). Rules and regulations must be consistent with the relevant statutes. *See **id.*** ("Statutory provisions control with respect to the rules and regulations promulgated by [an administrative agency]. Accordingly, [an administrative agency] may not make rules and regulations which conflict with, or are contrary to, the provisions of a statute, particularly the statute it is administering or which created it."). Therefore, the MSDH did not have the authority to grant RCG an extension of its CON after the CON had expired (nor the authority to promulgate a rule (in October 2007) stating that holders of expired CONS have the right to request an extension of their CONs within the first fifteen days following the adoption of the new Rules).

17

¶32.    For several reasons, it is illogical to argue that the MSDH's new Rules – i.e., the Temporary Rule RCG adopted on October 29, 2007, which became a Permanent Rule on February 23, 2008 – in some way corrected or sanctioned the MSDH's prior unlawful decisions to grant RCG extensions on an expired CON. First, an agency's promulgation of rules that (aside from one provision dealing with expired CONS) are consistent with a governing statute does not mean that, prior to the adoption of such rules, the agency did not have an obligation to limit its authority to that granted to it by the governing statute. In other words, while it is fully within the MSDH's authority to promulgate rules regarding CON extensions *consistent with* Section 41-7-195, the fact that it did so (in October 2007) does not mean that prior to promulgation of such rules, Section 41-7-195 was unclear or not authoritative. Nor does it negate the fact that RCG failed to request an extension of its CON prior to its CON's December 16, 2005, expiration date.

¶33.    Second, as noted above, the provision included in the new MSDH Rules granting holders of expired CONS the right to request an extension of their CONs within the first fifteen days following the adoption of the new Rules was not within the MSDH's authority to promulgate.

¶34.    Third, and perhaps most importantly, the MSDH did not propose its Temporary Rule until October 26, 2007, three days *after* Dialysis Solution had filed its Complaint in this matter and served the MSDH with process. The Temporary Rule did not become effective until October 29, 2007, and it did not become a Permanent Rule until February 24, 2008. Thus, the argument made by the defendants and adopted by the trial court that these Rules

18

somehow remedied any of the actions for which Dialysis Solution was suing the defendants is flawed, because these new Rules were not proposed until *after* the lawsuit had begun.

¶35.    In addition, the fact that the new Rules – aside from the one provision making an exception for holders of currently expired CONs – adopt Dialysis Solution's and the Attorney General's interpretation of Section 41-7-195 is evidence that the MSDH does not, and knows it does not, have the authority to revive and extend expired CONs.

¶36.    The Attorney General's Opinion of October 12, 2007, supports Dialysis Solution's argument that the MSDH has at all times lacked the authority to revive and extend an expired CON.  While Attorney General's Opinions are not binding, this Court certainly may consider them.  ***Tupelo Redevelopment Agency v. Gray Corp., Inc.***, 972 So. 2d 495, 509 (Miss. 2007).  It is the stated opinion of the Attorney General's Office that, after the CON's stated date of expiration, the CON is automatically void by operation of law, and no action on the part of the MSDH is needed to finalize the CON's voided status. Op. Att'y Gen. 2007-00467 (Miss. Oct. 12, 2007).  The Attorney General's Office elaborates:

> The statute expressly provides that a CON is valid only for the time period stated therein. . . . [and] [o]nce the time period stated in the CON has lapsed, the CON is void and no extensions can be granted.  At that point, the applicant would be required to reapply for a CON.

Op. Att'y Gen. 2007-00467 (Miss. Oct. 12, 2007).

¶37.    Lastly, the fact that RCG's CON has been fully implemented and its dialysis facility is currently licensed and serving public health needs is irrelevant to the legal issues this Court must decide.  Construction of RCG's dialysis facility was still in its infancy when Dialysis

19

Solution filed suit against it challenging the validity of its CON, and RCG's decision to continue to construct the facility after the lawsuit was filed should not affect the merits of Dialysis Solution's claims. In ***City of Durant v. Humphreys County Memorial Hospital/Extended Care Facility*** – a case in which the City of Durant challenged the Mississippi Health Care Commission's[6] issuance of a CON to a hospital for the construction of a nursing home – this Court held:

> . . . where an appellant's original action was timely and where he has promptly prosecuted his appeal, the completion of an act based upon improper authority does not legitimate the act or render the legal issues moot. . . . Here, plaintiffs sued within a reasonable time of learning of the outstanding CON and while HCMH/ECF's [i.e., the defendant's] construction was in its infancy. . . . That the evidence of HCMH/ECF's authority may have metamorphosed from CON to license hardly renders moot the core controversy.

***City of Durant v. Humphreys County Mem'l Hosp./Extended Care Facility***, 587 So. 2d 244, 249-50 (Miss. 1991) (citations omitted). While the defendants in the instant case are not arguing that the issues Dialysis Solution raises are moot because RCG's dialysis facility is now operational, the defendants do suggest that this Court should consider the harm that would result to ESRD patients if the operation of RCG's dialysis facility were impeded.

¶38. Like the plaintiff in ***City of Durant***, Dialysis Solution filed a timely complaint, doing so while construction of RCG's dialysis facility was still in its infancy, and subsequently timely appealed to this Court. As explained above, in a letter dated September 27, 2007,

---

[6] The Mississippi Health Care Commission (MHCC) was once an administrative agency of the State of Mississippi. Prior to July 1, 1986, MHCC administered the CON program. ***City of Durant v. Humphreys County Mem'l Hosp./Extended Care Facility***, 587 So. 2d 244, 246 (Miss. 1991).

Dialysis Solution requested a public hearing for revocation of RCG's CON, arguing that pursuant to Section 41-7-195, the MSDH is forbidden from extending a CON after the CON has lapsed (and forbidden from extending a CON for any amount of time exceeding six months). In a letter dated October 12, 2007, the MSDH denied Dialysis Solution's request for a public hearing on the revocation of RCG's CON. Therefore, on October 23, 2007 – a reasonable time after the MSDH had denied its request for a public hearing – Dialysis Solution filed a Complaint for Declaratory Judgment and Injunctive Relief in the Chancery Court for the First Judicial District of Hinds County, Mississippi. In addition, on February 20, 2008, Dialysis Solution filed a Motion for Temporary Restraining Order and/or Preliminary Injunction, requesting that the trial court enjoin RCG from continuing any construction of its dialysis facility until after the trial court ruled on the matter. At the time the Complaint was filed, construction of RCG's facility was still in its infancy; construction had begun only the previous month (or perhaps even later – this is a disputed fact), and it was not completed until nearly a year later. In sum, because Dialysis Solution's original action was timely filed and it promptly prosecuted its appeal, RCG's completion of its dialysis facility following the commencement of the lawsuit does not legitimate the act of building a facility while not possessing a valid CON.[7]

---

[7] The defendants also argue that Dialysis Solution should be faulted for not contesting the new Rules adopted by the MSDH regarding CON extensions "despite [having] the right to do so under the Mississippi Administrative Procedures Law, as well as pursuant to the administrative rule-making process followed by the MSDH in enacting the CON regulations." Whether or not Dialysis Solution contested the new Rules is irrelevant, because as noted earlier, the new Rules were promulgated *after* Dialysis Solution filed suit and served the MSDH with process. In its brief to this Court, Dialysis Solution explains that it "has no issue with the MSDH's adoption of the temporary

21

¶39. For the foregoing reasons, we find that a CON is valid only for the time period stated therein, and the MSDH does not have the legal authority to revive and extend a CON when a CON holder has failed to request an extension prior to the expiration date of its CON. Therefore, RCG's CON for the ESRD facility in Montgomery County was void as of December 16, 2005, its stated expiration date, and the MSDH did not have the authority to revive and extend it after that date.

## CONCLUSION

¶40. Accordingly, we reverse the trial court's holding that the MSDH had the authority to grant RCG an extension of its CON in January 2007, more than one year after RCG's CON had expired. RCG's CON is void by operation of law. If the MSDH still wants to issue a CON for an ESRD facility in Montgomery County, it will have to reopen the CON application and review process as provided by statute and regulation.

¶41. **REVERSED AND RENDERED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**

---

and permanent rule changes concerning the validity, duration and extension of CONs" because "[both] the temporary and permanent rules adopted by MSDH did not take effect until after the Plaintiff filed suit. . ." and "subsequent actions on the part of the MSDH do not change the facts and law as they were on October 23, 2007 when the lawsuit was filed."